**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

KIMBERLY FORD and :
MILDRED ROBINSON, :
                :
      Plaintiffs, :
                :    CIVIL ACTION NO.
v. :    1:14-CV-00527-RWS
                :
1280 WEST CONDOMINIUM :
ASSOCIATION, INC. *et al.*, :
                :
      Defendants. :
                :

## <u>ORDER</u>

This case comes before the Court on Defendants' Motion to Strike [37],

the Association's Motion for Partial Summary Judgment on Its Counterclaim

[38], Defendant Weibel's Motion to Dismiss [40], Defendants' Amended

Motion for Judgment on the Pleadings [41], Plaintiffs' Motions to Strike [56,

59], Plaintiffs' Motion for Extension of Time to Complete Discovery [61],

Plaintiffs' Cross-Motion for Summary Judgment [64], Defendant Paine's

Motion to Dismiss [77], Plaintiffs' Motion for Preliminary Injunction [78], and

Defendant 1280 West Condominium Association, Inc.'s Motion to Compel

Discovery [81].  After reviewing the record, the Court enters the following

Order.

**Background**

**I.      Factual Background**

Plaintiff Kimberly Ford and her mother, Plaintiff Mildred Robinson,

purchased a condominium unit at 1280 West Condominiums on November 30,

2005.  The 1280 West Condominium Association ("Association") is governed

by a Declaration and Rules and Regulations which prohibit the leasing of

condominium units unless the Association grants owners either a leasing permit

or a hardship-leasing permit.  (Declaration, Dkt. [1-3] at 8-9; Rules and Regs.,

Dkt. [14-2] at 26-37.)  The number of leasing permits is limited to no more than

25% of the residential units at 1280 West Condominiums.  (Id. at 9.)  After

encountering financial difficulties, Plaintiffs were granted hardship-leasing

permits from September 13, 2011, through August 19, 2013.  (Second Am.

Compl., Dkt. [21] ¶ 10.)  Plaintiffs requested a renewed permit on August 31,

2012, but Defendants denied their request some seven months later in March

2013.  (Id. ¶¶ 10, 15.)

2

Plaintiffs further allege that their application was denied without an opportunity for a hearing with the Board of Directors in violation of the Declaration.  (Id. ¶ 14.)  After Plaintiffs requested a hearing, Defendants again denied their request for a permit in a letter dated April 3, 2013.  (Id. ¶ 17.)  In that letter, Defendants invited Plaintiffs to submit additional documentation to the Management Office for the Board of Directors' consideration.  (Dkt. [1-2] at 16.)  The letter also noted that the next opportunity for a private conference with the Board would be on April 24, 2013.  (Id.)  Plaintiffs refer to this conference as a Rule 19(b) hearing, citing the section in the Declaration governing dispute resolution which requires condominium owners to request and attend a hearing with the Board of Directors before filing any lawsuit against the Association, the Board, or any officer, director, or property manager of the Association.  (See Declaration § 19(b), Dkt. [1-3] at 13.)  Despite their repeated requests, Plaintiffs allege that they were never afforded a dispute-resolution hearing with the Board.  (Second Am. Compl., Dkt. [21] ¶ 25.)

While Plaintiffs allege they complied with Defendants' application procedures, Plaintiffs state those procedures are more burdensome for African-Americans and women.  (Second Am. Compl., Dkt. [21] ¶¶ 13, 59.)  Plaintiffs

3

also assert that "Defendants' policies, rules, and regulations . . . are being applied selectively in the terms, conditions, and privileges of rental[,] thereby creating a disparate impact on protected classes of Owners."  (Id. ¶ 60.)  In support of these allegations, Plaintiffs say they have witnessed Defendants "issue multiple leasing permits to individual Owners of non-protected classes" even though Defendants denied Plaintiffs' permit and claimed that no permits were available.  (Id. ¶ 50.)  Plaintiffs further allege that while waiting to hear on a decision about their request for a renewed hardship-leasing permit, Defendants approved hardship-leasing permits for white male condominium owners.  (Id. ¶ 56.)

Based on the foregoing allegations, Plaintiffs filed suit against 1280 West Condominium Association; the Association's management company, Beacon Management Services, LLC; property manager Lisa Weibel; Beacon employee Felicia Clift; and Martin Paine.  Plaintiffs assert the following claims: (1) housing discrimination; (2) breach of contract; (3) intentional interference with potential economic advantage and business relations; (4) conspiracy to violate the Civil Rights Act of 1866, 42 U.S.C. § 1985; and (5) a combined claim for retaliation under the Civil Rights Act of 1866 and fraud.

**II.     1280 West Condominium Association's Counterclaims**

After Plaintiffs filed this action, the Association counterclaimed against

Plaintiffs, requesting (1) a permanent injunction for covenant violations and

breach of the condominium Declaration, (2) collection of unpaid fees, and (3)

contractual attorneys' fees and expenses.  (Answer, Dkt. [15] ¶¶ 38-64.)  These

counterclaims arise from Plaintiffs' attempt to lease their unit to Defendant

Martin Paine and his girlfriend.  After Defendants denied Plaintiffs another

hardship-leasing permit, in early 2014 Plaintiffs came into contact with Mr.

Paine, a citizen of Australia who had recently taken a position as a post-doctoral

research scholar at the Georgia Institute of Technology, and sent him a

reservation application and lease agreement for Plaintiffs' condominium unit.

(See Paine Decl., Dkt. [14-2] ¶¶ 2-3.)

Mr. Paine signed the lease on February 11, 2014, for a six-month term

from February 19, 2014, until August 19, 2014.  (Id. ¶ 4; Ex. B.)   On March 7,

2014, after moving into the unit, Mr. Paine met with the Association's property

managers upon learning that there was a problem with his application for an

access card to the building's facilities.  (Ass'n's Statement of Material Facts

("SMF"), Dkt. [38-2] ¶ 37.)  The Association was not aware of Mr. Paine and

Plaintiffs' arrangement until he provided them a copy of the lease, at which

point the Association determined that Plaintiffs were leasing their unit in

violation of the Declaration.  (Id. ¶¶ 38-39.)

The Declaration permits the Association to levy fines for violations of its

Rules and Regulations.  (See Declaration, Dkt. [14-1] § 9(c), at 8.)  On March

10, 2014, the Association sent Plaintiffs a notice that they were leasing their

unit in violation of the Declaration and that the Board of Directors was

assessing fines against them in the amount of $100 per day for leasing their unit

without a permit, and an additional $100 per day for each day Plaintiffs allowed

their tenants to access the condominium using Plaintiffs' access cards.  (Ass'n's

SMF, Dkt. [38-2] ¶¶ 47-49.)  Furthermore, Plaintiffs allege that the Association

suspended their access cards, thus denying them free access to all areas of the

Association's facilities.  (Second Am. Compl., Dkt. [21] ¶ 141.)  The

Association imposed the fines beginning on February 19, 2014, the first day of

the lease term as reflected in the lease agreement.  (Ass'n's SMF, Dkt. [38-2] ¶¶

47-49.)  Finally, the Association imposed a single $500 fine for advertising

their unit for a lease term of less than one year in violation of the Declaration,

which only allows owners to list, market, or advertise their units for terms over

6

one year.  (Id. ¶¶ 18, 53.)  Based on these facts, the Association moves for partial summary judgment on its counterclaims.

### III.    Procedural Background

Plaintiffs initially filed this action against the Association and Beacon in the Superior Court of Fulton County.  Defendants removed the case on February 21, 2014.  Plaintiffs filed an Amended Complaint [19] on April 4, 2014, and a Second Amended Complaint [21] on April 7, 2014, which added Defendants Weibel, Clift, and Paine.  The Court then denied Plaintiffs' Motion for Emergency Temporary Relief [2].  Defendants moved for a Rule 16 conference to determine the operative complaint in the case and also moved to strike Plaintiffs' Second Amended Complaint because Plaintiffs failed to seek leave to amend.

The Court granted Defendants' motion for a Rule 16 conference, which the Court held on June 3, 2014.  (Minute Entry, Dkt. [74].)  At that conference, the Court, in consultation with the parties, permitted Plaintiffs to proceed on their Second Amended Complaint.  The Court also addressed confusion surrounding the numerous motions and responses filed in this case.  In short,

Plaintiffs moved to strike the Association's Motion for Judgment on the Pleadings [41] along with some of their own responses.  By agreement of the parties, however, the Court will consider the Association's Motion for Judgment on the Pleadings [41], Plaintiffs' responses located at docket numbers [58] and [60], and Defendants' replies at docket numbers [71] and [72].  Also before the Court are the parties' cross motions for summary judgment on the Association's counterclaim [38, 64] and the Association's Motion to Compel Discovery [81].

Based on the consensus of the parties reached at the Rule 16 conference, Defendants' Motion to Strike [37] is **DENIED**, Plaintiffs' Motion to Strike Plaintiffs' Filing of Documents 19, 50, and 52 [56] is **GRANTED**, and Plaintiffs' Motion to Strike the Association's Motion for Judgment on the Pleadings [59] is **DENIED**.  The Court now turns to the merits of the case.

## Discussion

### I.   Defendants Weibel and Paine's Motions to Dismiss [40, 77]

Both Defendants Weibel and Paine argue that they should be dismissed from this suit because, among other reasons, they were not served process in compliance with Federal Rule of Civil Procedure 4(m).  "The plaintiff is

8

responsible for having the summons and the complaint served within the time allowed under Rule 4(m) . . . ." FED. R. CIV. P. 4(c)(1).  Rule 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).  When, as in this case, a plaintiff does not request waiver of service from an individual defendant pursuant to Rule 4(d),[1] the plaintiff is required to effect personal service on the defendant pursuant to Rule 4(e). Lepone-Dempsey v. Carroll Cnty. Comm'rs, 476 F.3d 1277, 1281 (11th Cir. 2007).

Under Rule 4(e), service of process on an individual in the Northern District of Georgia may be effected in one of four ways: first, by serving the defendant with process in accordance with Georgia law;[2] second, by delivering

---

[1] This provision governs waiver of service and provides that "[t]he plaintiff may notify . . . a defendant that an action has been commenced and request that the defendant waive service of a summons."  FED. R. CIV. P. 4(d).

[2] The Georgia statute governing service of process on an individual defendant provides for service of process in the same manner as permitted under Federal Rule 4(e).  See O.C.G.A. § 9-11-4(e)(7) ("Service shall be made by delivering a copy of the summons attached to a copy of the complaint as follows:  In [the case of an individual defendant] personally, or by leaving copies thereof at the defendant's dwelling house

AO 72A
(Rev.8/82)

to the defendant personally a copy of the summons and complaint; third, by leaving a copy of each at the defendant's "dwelling or usual place of abode," under certain conditions; or finally, by leaving a copy of each with an "agent authorized by appointment or by law to receive service of process."  FED. R. CIV. P. 4(e).

Although Plaintiffs contend that they have properly served both Ms. Weibel and Mr. Paine, the Court can find no evidence of service in the record. There are two docket entries titled "Notice of Filing Summons" [51, 53] for both individuals, but they simply include copies of unsigned summonses. Plaintiffs also filed an "Electronic Summons" issued to both Ms. Weibel and Mr. Paine [55, 55-1], but each of those includes a completely blank Proof of Service.  There is thus no evidence that Defendants were served personally, or waived service, in a method allowed by Rule 4.  At the Rule 16 conference, Plaintiffs acknowledged there were issues with service of process and stated they would take steps to perfect service.  Plaintiffs have failed to take any steps to cure the insufficient service of process, the 120-day time limit for service of

---

or usual place of abode with some person of suitable age and discretion then residing therein, or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process.").

AO 72A
(Rev.8/82)

process has lapsed, and Plaintiffs have failed to show good cause for their

failure to effect sufficient service of process.  Therefore, Defendants Weibel

and Paine's Motions to Dismiss [40, 77] are hereby **GRANTED**.

## II.   1280 West Condominium Association and Beacon's Amended Motion for Judgment on the Pleadings [41]

### A.   Legal Standard

After the pleadings are closed but within such time as not to delay trial, a

party may file a motion for judgment on the pleadings.  FED. R. CIV. P. 12(c).

Judgment on the pleadings is appropriate only when no issues of material fact

exist, and the movant is entitled to judgment as a matter of law.  Ortega v.

Christian, 85 F.3d 1521, 1524 (11th Cir. 1996).  A court considers only the

substance of the pleadings and any judicially noticed facts, and the court

accepts the facts in the complaint as true and views them in the light most

favorable to the nonmoving party.  Hawthorne v. Mac Adjustment, Inc., 140

F.3d 1367, 1370 (11th Cir. 1998).  Thus, to survive a motion for judgment on

the pleadings, "a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)).  A complaint is plausible on its face when the plaintiff pleads

factual content necessary for the court to draw the reasonable inference that the

defendant is liable for the conduct alleged.  Id.

"The district court generally must convert a motion to dismiss into a

motion for summary judgment if it considers materials outside the complaint."

D.L. Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005); see also FED. R.

CIV. P. 12(d).  However, documents attached to a complaint are considered part

of the complaint.  Fed. R. Civ. P. 10(c).  Documents "need not be physically

attached to a pleading to be incorporated by reference into it; if the document's

contents are alleged in a complaint and no party questions those contents, [the

court] may consider such a document," provided it is central to the plaintiff's

claim.  D.L. Day, 400 F.3d at 1276.  At the motion to dismiss phase, the Court

may also consider "a document attached to a motion to dismiss . . . if the

attached document is (1) central to the plaintiff's claim and (2) undisputed."  Id.

(citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)).  "'Undisputed'

means that the authenticity of the document is not challenged."  Id.

    B.    Analysis

        1.    **Housing Discrimination**

12

The Fair Housing Act ("FHA") prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). To establish a prima facie case of discrimination, Plaintiffs must show: (1) that they were members of a protected class under the FHA; (2) that they were qualified to receive a hardship-leasing permit; (3) that the permit was denied on the basis of their race or sex; and (4) that other similarly situated condominium owners of a non-protected class were granted hardship-leasing permits. See Sallion v. SunTrust Bank, 87 F. Supp. 2d 1323, 1329 (N.D. Ga. 2000) (setting forth steps needed to prove a prima facie case of discrimination under the FHA). "A plaintiff can establish a [prima facie] violation under the FHA by proving (1) intentional discrimination[ or] (2) discriminatory impact . . . ." Bonasera v. City of Norcross, 342 F. App'x 581, 583 (11th Cir. 2009) (citing Schwarz v. City of Treasure Island, 544 F.3d 1201 (11th Cir. 2008); Hallmark Developers, Inc. v. Fulton County, Ga., 466 F.3d 1276 (11th Cir. 2006)).

Defendants contend that Plaintiffs fail to show either disparate treatment or disparate impact. Plaintiffs concede that the Declaration as written does not

13

discriminate or disproportionately affect African-Americans and females.  (See Pls.' Resp., Dkt. [60] at 10-11.)  However, Plaintiffs emphasize that Defendants' actions described in the Background section—namely, selectively enforcing the Declaration against them but not white condominium owners—"operated to discriminate both directly and had a disparate impact on protected groups of owners."  (Id. at 10.)

### a.    Disparate Treatment

"[A] disparate treatment claim requires a plaintiff to show that he has actually been treated differently than similarly situated non-[minority] people." Schwarz, 544 F.3d at 1216.  Plaintiffs allege that Defendants intentionally discriminated against them by treating them differently from similarly situated non-minority male owners by, for example, denying Plaintiffs a hardship-leasing permit while granting permits to non-minorities.  Defendants, on the other hand, argue that Plaintiffs fail to show that they were qualified to receive a hardship-leasing permit, that the permit was denied on the basis of their race or sex, or that they were treated differently from other unit owners in their requests for hardship-leasing permits.  (Defs.' Br., Dkt. [41-1] at 21.)

14

First, Defendants argue that Plaintiffs were not qualified to receive a hardship-leasing permit because the Declaration prohibits approval of leasing permits to owners occupying their units.  (<u>Id.</u>)  Though Plaintiffs did attach to their Second Amended Complaint letters from Defendants explaining that the denial was due in part to Plaintiffs' occupation of the unit, those letters—construed in the light most favorable to Plaintiffs—only reflect Defendants' allegation that Plaintiffs were living there.  It is not clear from Plaintiffs' pleadings that they were living in their unit when Defendants denied their hardship-leasing application.

Defendants next assert that Plaintiffs rely on conclusory allegations and speculation and have failed to identify any similarly situated unit owners who were granted leasing permits.  But Plaintiffs do allege the following:

- Defendants selectively enforced Declaration provisions;

- Defendants denied Plaintiffs hardship-leasing permits but approved permits for non-minority owners even after claiming that no leasing permits were available;

- Defendants created a scheme of denying applications for hardship leases to certain minority owners, as well as denying those owners the right to a dispute-resolution hearing pursuant to Section 19(b) of the Declaration; and

15

- Defendants used a more burdensome permit application, approval, and appeals process for African-Americans and females than for non-minority males.

(See Second Am. Compl., Dkt. [21] ¶¶ 45, 49-51, 56-60.)

Plaintiffs also provide a specific example of Defendants' disparate treatment of Plaintiffs and other owners.  Plaintiffs incorporated Affidavits in their Complaint in which they assert that they witnessed Defendants approve two leasing permits for Brian Hall, a white male condominium owner, even though he was living in one of the units and was renting another unit without a leasing permit in violation of the Declaration.  (See Dkt. [1-3] at 2-6.)  Thus, even if Plaintiffs conceded they were living in the unit, they have also alleged discrimination based on Defendants' selective enforcement of the Declaration. The Eleventh Circuit has recognized selective enforcement as a basis for FHA claims.  See Wells v. Willow Lake Estates, Inc., 390 F. App'x 956, 959 (11th Cir. 2010) (holding that mobile-home community's selective enforcement of regulations regarding home and lawn appearance as pretext for disability and national origin discrimination could violate the FHA); Bonasera v. City of Norcross, 342 F. App'x 581, 585 (11th Cir. 2009) (observing that city's selective enforcement of single-family zoning ordinance against Hispanic

16

families could violate the FHA if city was aware of violations by white homeowners and chose to ignore them).  Therefore, Plaintiffs' allegations that Defendants approved multiple leasing permits for non-minorities and permitted the transfer of leasing permits between units for non-minority owners, even though both actions violate the Declaration, while enforcing Declaration provisions against Plaintiffs, can serve as a basis for Plaintiffs' housing discrimination claim.  (See Second Am. Compl., Dkt. [21] ¶¶ 49-50.)

In sum, taking the above allegations as true, and construing all factual inferences in Plaintiffs' favor, the Court finds that Plaintiffs state a plausible claim for housing discrimination.  Although Plaintiffs do not allege many specific facts, and at times allegations are less than perfectly clear, Plaintiffs do allege just enough facts that rise above the types of labels and conclusions that the Supreme Court disapproved of in Iqbal and Twombly.  Defendants' assertions that the Association does not keep demographic information and that Plaintiffs were not entitled to a hardship-leasing permit are arguments more appropriate for consideration on a motion for summary judgment.  Based on Plaintiffs' allegations that (1) they were never afforded a dispute-resolution hearing, (2) Defendants selectively enforced rules against them, (3) Defendants

created a more burdensome application process for them as opposed to non-minority male condominium owners, and (4) Plaintiffs witnessed Defendants issue multiple leasing permits to non-minority owners while denying them permits, Plaintiffs' claim meets Rule 8's plausibility standard.  See Marton v. Lazy Day Property Owners Ass'n, Inc., No. 2:10-cv-117-FTM-29DNF, 2011 WL 1232375, at *5 (M.D. Fla. Mar. 30, 2011) (finding that plaintiff stated a claim when she alleged "that defendants imposed different terms and conditions to [her] by subjecting her to a more rigorous enforcement of community rules, to harassment, and to a threat of citation for rules violations which had no basis in law" (internal quotation marks omitted)).  Defendants' motion is thus **DENIED** as to Plaintiffs' intentional discrimination claim.

### b.    *Disparate Impact*

"[T]he Fair Housing Act prohibits 'not only direct discrimination but practices with racially discouraging effects . . .'; thus, a showing of a significant discriminatory effect suffices to demonstrate a [prima facie] violation of the Fair Housing Act."  Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1543 (11th Cir. 1994) (quoting United States v. Mitchell, 580 F.2d 789, 791 (5th Cir. 1978)).  "A plaintiff can demonstrate a discriminatory effect in two ways: it can

demonstrate that the decision has a segregative effect or that 'it makes housing options significantly more restrictive for members of a protected group than for persons outside that group.' " <u>Hallmark</u>, 466 F.3d at 1286 (quoting <u>Hous. Investors, Inc. v. City of Clanton, Ala.</u>, 68 F. Supp. 2d 1287, 1298 (M.D. Ala. 1999)).

Defendants argue that this claim is subject to dismissal because Plaintiffs fail to allege that there is any statistical evidence showing a disparate impact on minorities, and they even fail to allege the extent to which African-Americans and women are disproportionately impacted by Defendants' decisions to deny them hardship-leasing permits.  (Defs.' Br., Dkt. [41-1] at 18-19.)  While Plaintiffs are not required at this stage to produce detailed statistics, they must allege that Defendants' policies had a segregative effect or that Defendants' selective enforcement made housing options significantly more restrictive for African-Americans.  Plaintiffs allege neither.  Plaintiffs make the conclusory allegation that Defendants' selective enforcement of Declaration provisions against minorities created a disparate impact on protected classes.  (Second Am. Compl., Dkt. [21] ¶ 60.)  But Plaintiffs do not allege whether the selective enforcement effectively segregated the 1280 West Condominium community or

significantly restricted housing options for minorities there.  Rather, Plaintiffs

allege only that Defendants denied them a leasing permit.  Besides alleging

anecdotal evidence that they were treated differently from non-minority owners,

Plaintiffs fail to explain how Defendants' actions " 'otherwise make

unavailable' or effectively 'deny' housing to [minorities]."  See Marton, 2011

WL 1232375, at *6 (quoting Hallmark, 466 F.3d at 1284); cf. Hous.

Opportunities Project for Excellence, Inc. v. Key Colony No. 4 Condo. Ass'n,

Inc., 510 F. Supp. 2d 1003, 1012-13 (S.D. Fla. 2007) (holding that plaintiffs

stated a claim when they alleged that restrictive occupancy rules and the

publication of those rules had "discouraging effects to families with children

who choose not to live in a housing facility that does not permit more than two

children").  Thus, while Plaintiffs' allegations state a plausible claim for

intentional discrimination, the allegations fail to establish that Defendants'

policies had a disparate impact on the availability of housing to minorities.

Defendants' motion is **GRANTED** as to Plaintiffs' disparate impact claim.

### 2.     Breach of Contract

The elements of a breach of contract claim are a valid contract, the

breach, and the resultant damages to the party who has a right to complain that

20

the contract was broken.  <u>Budget Rent-A-Car of Atlanta v. Webb</u>, 469 S.E.2d

712, 713 (Ga. Ct. App. 1996).  Plaintiffs' breach of contract claim is based on

(1) the denial of their hardship-leasing permit applications, (2) Defendants'

refusal to grant them a hearing, and (3) the suspension of Plaintiffs' access to

common areas in the condominium building.  (<u>See</u> Second Am. Compl., Dkt.

[21] ¶¶ 74-93.)  Defendants contend that this claim fails as a matter of law

because they had discretion to deny the leasing permits, they provided Plaintiffs

a hearing as required by the Declaration, and they justifiably limited Plaintiffs'

access to common areas in the condominium building.

    First, Defendants argue that because their decision to deny Plaintiffs'

application for a hardship-leasing permit was solely within the Board's

discretion, "[t]here can be no breach . . . where a party to a contract has done

what the provisions of the contract expressly give him the right to do."  <u>See</u>

<u>Automatic Sprinkler Corp. v. Anderson</u>, 257 S.E.2d 283, 284 (Ga. 1979).

Moreover, Defendants note that leasing permits are not available to owners

occupying their units.  (<u>See</u> Defs.' Mot. for J. on the Pleadings, Dkt. [41-1] at

5.)  In response, Plaintiffs argue that while Defendants have discretion to

approve or deny leasing permits, Defendants applied different standards in making their decisions with respect to minority owners.  The Court agrees.

As discussed <u>supra</u>, Plaintiffs' allegations are sufficient to state a claim for housing discrimination.  Similarly, these allegations state a claim for breach of contract because Plaintiffs plausibly allege that Defendants failed to abide by the Declaration's hardship-leasing provisions by applying different standards to minority owners.  And while Defendants insist that Plaintiffs were occupying their unit at the time, as explained above, that fact is unclear.

With respect to the Section 19(b) hearing, Defendants point to a letter attached to the Complaint dated March 26, 2013, in which they invite Plaintiffs to attend a Board meeting or request a private conference to address their grievances.  (Dkt. [1-2] at 15.)  However, Plaintiffs repeatedly allege that they were never granted that hearing.  Therefore, taking Plaintiffs' allegations as true, the Court finds that Plaintiffs have stated a breach of contract claim based on the failure to grant a hearing to contest the denial of their leasing permit.

Finally, Defendants urge dismissal of Plaintiffs' breach of contract claim based on the suspension of Plaintiffs' access cards because the Association was entitled to suspend them under the Declaration to penalize Plaintiffs for leasing

22

without a permit.  (See Defs.' Br., Dkt. [41-1] at 9.)  Defendants also point out

that Plaintiffs never alleged they were denied access to their unit.  Given the

Court's conclusion below that the Association is entitled to summary judgment

on its counterclaim, the breach of contract claim based on the deactivation of

the access cards is without merit.  Therefore, Defendants' motion is **DENIED**

as to Plaintiffs' breach of contract claim related to the hardship-leasing permits

and refusal to grant a hearing, and **GRANTED** as to Plaintiff's claim based on

the deactivation of their building access cards.[3]

### 3.     Intentional Interference with Potential Economic Advantage and Business Relations

Plaintiffs allege that Defendants made false statements to Mr. Paine to

dissuade him from entering into a lease with Plaintiffs.  (Second Am. Compl.,

Dkt. [21] ¶ 111.)  To recover under tortious interference with business relations,

---

[3]To the extent Plaintiffs assert a claim based on any alleged violations of a property management agreement between the Association and Beacon, that claim fails.  First, Plaintiffs have no standing to bring such a claim because they were not third-party beneficiaries to the agreement.  See Perry Golf Course Dev. v. Hous. Auth. of City of Atlanta, 670 S.E.2d 171, 174 (Ga. Ct. App. 2008) (holding that "a third-party beneficiary may be created only by the express terms of the contract").  The agreement does not identify them as beneficiaries, (see Dkt. [14-3] at 10) nor do they allege they are third-party beneficiaries of the agreement.  Second, Plaintiffs do not allege how the property management agreement was breached.  In sum, a breach of contract claim based on a contract between the Association and Beacon fails.

23

a plaintiff must prove that a defendant: "1) acted improperly and without

privilege; 2) acted purposely and with malice or intent to injure; 3) induced a

third party or parties not to enter into or continue a business relationship with

the plaintiff; and 4) caused the plaintiff financial injury." <u>Britt/Paulk Ins.</u>

<u>Agency, Inc. v. Vandroff Ins. Agency, Inc.</u>, 952 F. Supp. 1575, 1581 (N.D. Ga.

1996) (citing <u>Renden, Inc. v. Liberty Real Estate Ltd. P'ship</u>, 444 S.E.2d 814,

817 (Ga. Ct. App. 1994)).  Plaintiffs must further show that Defendants were

"intermeddlers" or "strangers" to the business relationship.  <u>Id.</u> at 1582.  Under

Georgia law, a defendant is not a stranger as a matter of law when

> 1) the defendant is an essential party to the purported injured
> relations; 2) the allegedly injured relations are inextricably a part
> of or dependent upon the defendant's contractual or business
> relations; 3) the defendant would benefit economically from the
> alleged injured relations; or 4) both the defendant and the plaintiff
> are parties to a comprehensive interwoven set of contracts or
> relations.

<u>Id.</u> at 1584; <u>see also</u> <u>Disaster Servs., Inc. v. ERC P'ship</u>, 492 S.E.2d 526, 529

(Ga. Ct. App. 1997) ("For purposes of this type of tort, 'privilege' means

legitimate economic interests of the defendant or a legitimate relationship of the

defendant to the contract, so that it is not considered a stranger, interloper, or

meddler.").  If "a defendant had a legitimate interest in either the contract or a

24

party to the contract, the defendant is not a stranger to the contract." <u>Disaster</u>

<u>Servs.</u>, 492 S.E.2d at 529.

According to Defendants, their actions were justified by privilege, and

Plaintiffs failed to allege that Defendants were strangers to the business

relations between Plaintiffs and Mr. Paine.  (Defs.' Br., Dkt. [41-1] at 14-15.)

Defendants argue that because Plaintiffs agreed to be bound by the Declaration

and Rules and Regulations, which grant Defendants authority to grant or deny

leasing permits, Defendants are not strangers to any contract to sublease

Plaintiffs' unit.  (<u>Id.</u>)

Plaintiffs do not meaningfully respond to these arguments.  Moreover,

the Court finds that Defendants' arguments have merit.  Because the

Association had authority to grant leasing permits, it is "an essential party to the

purported injured relations, . . . the allegedly injured relations are inextricably a

part of or dependent upon [Defendants'] contractual or business relations, . . .

[and] both [Defendants] and [Plaintiffs] are parties to a comprehensive

interwoven set of contracts or relations": the Declaration and Rules and

Regulations.  <u>See</u> <u>Britt/Paulk Ins. Agency</u>, 952 F. Supp. at 1584.  Defendants'

25

Motion for Judgment on the Pleadings is **GRANTED** as to Plaintiffs' tort claim for intentional interference with business relations.

### 4.      Conspiracy to Violate the Civil Rights Act of 1866

Defendants argue that there is no independent cause of action under Georgia law for conspiracy.  Even so, it is evident that Plaintiffs' conspiracy claim is rooted in a federal cause of action for conspiracy to interfere with civil rights.  <u>See</u> 42 U.S.C. § 1985.  Because Defendants offer no other arguments in favor of dismissal of Plaintiffs' conspiracy claim, Defendants' motion is **DENIED** with respect to this claim.

### 5.      Retaliation under the Civil Rights Act of 1866 and Fraud

Plaintiffs appear to combine a claim for retaliation under the Civil Rights Act of 1866 and a claim for fraud.  Plaintiffs' retaliation claim arises under 42 U.S.C. § 1981.  According to Defendants, "a plaintiff can make a claim for retaliation only if [an adverse action] was done in response to 'protected conduct.' "  <u>See</u> <u>Benton v. Cousins Props.</u>, 230 F. Supp. 2d 1351, 1381 (N.D. Ga. 2002); <u>see also</u> <u>Tucker v. Talladega City Sch.</u>, 171 F. App'x 289, 296 (11th Cir. 2006) (stating in the Title VII context that a prima facie case of retaliation

26

under § 1981 requires a plaintiff to show (1) a statutorily protected expression,

(2) an adverse employment action, and (3) causation).

Plaintiffs allege that Defendants removed them from the hardship-leasing

list after they engaged in protected activity by complaining about Defendants'

alleged discriminatory policies.  (See Second Am. Compl., Dkt. [21] ¶ 130.)

Defendants then falsely accused Plaintiffs of entering into a lease with Mr.

Paine despite knowledge that Plaintiffs had not yet executed a formal lease with

him.  (See id. ¶¶ 136-140.)  Defendants continued their alleged retaliation by

refusing to grant Plaintiffs a grievance hearing, disabling Plaintiffs' access

cards, and permitting Mr. Paine to continue to stay in the unit for several weeks.

(Id. ¶¶ 139-148.)  Defendants contend, on the other hand, that Plaintiffs fail to

allege they engaged in protected conduct and fail to show a causal connection

between their complaints and the decision to deny their hardship leasing permit.

(Defs.' Br., Dkt. [41-1] at 12.)

Plaintiffs failed to respond to Defendants' motion on this claim.

However, the Court is not persuaded by Defendants' arguments that Plaintiffs

fail to state a claim.  Plaintiffs plausibly allege that (1) they engaged in

protected activity by objecting to Defendants' alleged selective enforcement of

the Declaration; (2) they suffered adverse actions due to Defendants' refusal to grant them a dispute-resolution hearing under Declaration § 19(b); and (3) there is a causal connection between the protected activity and the adverse actions based on the temporal proximity of the actions.  So, even though Defendants argue they denied the permit before the lawsuit was filed, Plaintiffs allege that before filing suit they complained about Defendants' discrimination, they requested a hearing, and they were denied one in violation of the Declaration. Defendants' motion is accordingly **DENIED** with respect to Plaintiffs' retaliation claim.

Next, to the extent Plaintiffs attempt to state a fraud claim related to Defendants' alleged false accusation that Plaintiffs entered into a lease with Mr. Paine, that claim fails.  The elements of fraud are: "a false representation, scienter, inducement, reliance, and injury resulting from reliance on the false representation."  Cox v. Bank of Am., 742 S.E.2d 147, 148 (Ga. Ct. App. 2012) (quoting Little v. Fleet Finance, 481 S.E.2d 552, 556 (Ga. Ct. App. 1997)). Plaintiffs do not allege that these statements induced them to take any action, that they relied on the statements for any purpose, or that they were injured

28

based on that reliance.  Consequently, Defendants' motion is **GRANTED** as to Plaintiffs' claim for fraud.

### 6.     Beacon's Liability

Defendants object to Beacon's joinder as a party, asserting that Plaintiffs fail to allege a factual basis for proceeding on an alter ego theory.  Defendants further argue that as a property manager, Beacon only performs administrative functions on behalf of the Association.  (Defs.' Br., Dkt. [41-1] at 23.)  As alleged, however, Plaintiffs assert that Beacon employees Ms. Weibel and Ms. Clift were parties to the alleged conspiracy to violate their rights under the FHA.  Moreover, Plaintiffs allege that they made their complaints about the denial of their hardship-leasing permit to Beacon, and then Defendants collectively suspended Plaintiffs' access cards.  (Compl., Dkt. [21] ¶¶ 122, 145.)  Plaintiffs do not allege that the Board was the exclusive decision maker or that Beacon performed solely administrative functions.  Plaintiffs' allegations thus state a claim, and Beacon's arguments are more appropriate for consideration on summary judgment.

In sum, Defendants' Motion for Judgment on the Pleadings [41] is **GRANTED** with respect to the disparate impact claim in Count I, the breach of

contract claim based on deactivation of the access cards in Count II, Plaintiffs'

claim for intentional interference with business relations in Count III, and

Plaintiffs' fraud claim in Count V.  It is **DENIED** as to all other claims.

### III.   1280 West Condominium Association's Motion for Partial Summary Judgment on Its Counterclaim and Plaintiffs' Cross Motion for Summary Judgment

   A.   <u>Legal Standard</u>

Federal Rule of Civil Procedure 56 requires that summary judgment be

granted "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.

56(a).  "The moving party bears 'the initial responsibility of informing the . . .

court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue

of material fact.'"  <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1259

(11th Cir. 2004) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)

(internal quotations omitted)).  Where the moving party makes such a showing,

the burden shifts to the non-movant, who must go beyond the pleadings and

present affirmative evidence to show that a genuine issue of material fact does

exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must

view all evidence and draw all reasonable inferences in the light most favorable

to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296

(11th Cir. 2002).  But, the court is bound only to draw those inferences which

are reasonable.  "Where the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations

omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met

31

its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

B.   Analysis

The Association moves for summary judgment on its counterclaim regarding Plaintiffs' "violation of leasing restrictions in the condominium instruments that govern 1280 West Condominium."  (Ass'n's Br., Dkt. [38-1] at 1.)  Specifically, the Association's counterclaim contends that Plaintiffs violated the leasing restrictions by leasing without the required permit, leasing for a term shorter than one year, and failing to provide appropriate documentation to the Association.

The Court draws the focus of its analysis on the laws governing condominiums, the Declaration and Rules and Regulations, and whether Plaintiffs breached the leasing restrictions found in those documents.  So while Plaintiffs stress that, in their dispossessory action against Mr. Paine, the Magistrate Court of Fulton County found that there was no lease, Plaintiffs' previous dispossessory action is irrelevant to the Court's determination of whether Plaintiffs leased their unit within the meaning of the Declaration and Rules and Regulations.

32

Condominium bylaws "represent a form of private law making, in which individual owners come together and agree to subordinate some of their traditional individual ownership rights and privileges when they choose this type of ownership experience." Demere Landing Condo. Owners Ass'n v. Matthews, 726 S.E.2d 416, 418 (Ga. Ct. App. 2012) (quoting Bradford Square Condo. Ass'n v. Miller, 573 S.E.2d 405, 409 (Ga. Ct. App. 2002)).  Thus, condominium bylaws "should be strictly construed as they are written, giving the language its clear, simple, and unambiguous meaning." Id.  In addition, under the Georgia Condominium Act, "any unit owner . . . shall comply with any reasonable rules or regulations adopted by the association pursuant to the condominium instruments which have been provided to the unit owners and with the lawful provisions of bylaws of the association.  Any lack of such compliance shall be grounds for an action to recover sums due, [or] for damages or injunctive relief." O.C.G.A. § 44-3-76.

Section 15 of the Declaration reads in part as follows:

Except as provided herein, the leasing of Units shall be prohibited. "Leasing," for the purposes of this Declaration, is defined as regular, exclusive occupancy of a Unit by any Person other than the Owner.  For purposes hereof, occupancy by a roommate of an

33

Owner who occupies the Residential Unit as such Owner's primary
residence shall not constitute Leasing hereunder.

(Declaration, Dkt. [14-1] at 57.)  Section 15(a)(i) then provides that owners may

lease "only if they have applied for and received from the Board of Directors

either a 'Leasing Permit' or a 'Hardship Leasing Permit.' " (Id.)  "All leases

must be for an initial term of not less than one (1) year."  (Id. at 59.)  The Rules

and Regulations further state, "A Unit may be considered to be leased

hereunder even if no rent is paid to the Owner."  (Dkt. [14-2] at 30.)  It is

undisputed that the Association denied Plaintiffs' request for a hardship-leasing

permit.  Even if Plaintiffs were wrongfully denied the permit, the issue for the

Court is whether, having been denied the permit, Plaintiffs leased their unit in

violation of the Declaration.

Turning to the circumstances here, the Court finds that Plaintiffs leased

their unit without a permit and thus violated the terms of the Declaration.  First,

Mr. Paine signed a document titled "Georgia Residential Lease Agreement," to

lease the unit exclusively for a period of six months beginning on February 19,

2014.  (Dkt. [14-4] at 10.)  Second, although Plaintiffs did not sign this

document, Mr. Paine moved into the unit and then met with property

34

management on March 7, 2014, to obtain an access card, at which point he

learned that the Association did not know about the lease.  (Paine Decl., Dkt.

[14-4] ¶ 5.)

Further, even if a lease was never legally consummated, as Plaintiffs

argue, e-mails between Plaintiffs and Mr. Paine demonstrate an intention to

enter into a valid lease for a term of six months, short of the minimum lease

term required by the Declaration.  Ms. Ford and Mr. Paine discussed various

move-in issues, such as obtaining an access card and payment of rent.  (See

Dkt. [14-5] at 15-17.)  On March 10, 2014, Ms. Ford wrote, "Please note that

the HOA does NOT permit rentals for any less than a 1-year term," and stated

that they were considered roommates.  (Id. at 15.)  However, a non-owner is

only considered a roommate under the Declaration if the owner occupies the

unit as their primary residence.  (Declaration, Dkt. [14-1] at 57.)  And although

Plaintiffs had access to the unit, the agreement contemplated an exclusive lease,

and it is evident from the e-mail exchange that the unit was not Plaintiffs'

primary residence.  (See Dkt. [14-5] at 14-18.)   Finally, Mr. Paine actually

moved in with his girlfriend with the intention of staying for a six-month term.

Considering these facts together, the Court concludes that Plaintiffs leased their unit to Mr. Paine within the meaning of the Declaration, thereby violating the Association's leasing restrictions.  Therefore, the Association's Motion for Partial Summary Judgment on Its Counterclaim [38] is **GRANTED**, and Plaintiffs' Cross-Motion for Summary Judgment [64] is **DENIED**. However, in light of Plaintiffs' pending claims against the Association, the Court reserves ruling on damages until the Court resolves those claims.

## IV.    Plaintiffs' Motion for Preliminary Injunction [78]

Plaintiffs again move for a preliminary injunction, arguing that Defendants deactivated their access cards to the condominium facilities to deny them full use of their property.  Before a court will grant a motion for a temporary restraining order, the moving party must establish that: (1) "it has substantial likelihood of success on the merits," (2) it will suffer irreparable injury if the relief is not granted, (3) the threatened injury outweighs the harm the relief may inflict on the non-moving party, and (4) entry of relief "would not be adverse to the public interest." KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1268 (11th Cir. 2006).  A temporary restraining order "is an extraordinary and drastic remedy not to be granted unless the movant 'clearly

carries the burden of persuasion' as to the four prerequisites." United States v. Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting Canal Auth. v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974)).  "Of these four requisites, the first factor, establishing a substantial likelihood of success on the merits, is most important . . . ." ABC Charters, Inc. v. Bronson, 591 F. Supp. 2d 1272, 1294 (S.D. Fla. 2008).

In its earlier Order [34] on Plaintiffs' motion for injunctive relief, the Court reasoned the Plaintiffs would not suffer irreparable harm because their only harm was likely to be financial.  (Dkt. [34] at 4.)  The Court distinguished this case from one seeking to avert foreclosure on one's home.  See Johnson v. U.S. Dep't of Agric., 734 F.2d 774, 789 (11th Cir. 1984) (holding that "irreparable injury is suffered when one is wrongfully ejected from his home").  Plaintiffs now argue that the deactivation of their access cards constitutes irreparable harm.  (See Mot. for Injunctive Relief, Dkt. [78-1] at 5-6.)

Defendants acknowledge that Plaintiffs were fined and the Association deactivated their access cards "until the account is paid in full."  (Weibel Decl., Dkt. [82-1] ¶ 4.)  Ms. Weibel further states, "Because their access cards have been deactivated, Ms. Ford and Ms. Robinson must enter the building through

the Motor Lobby entrance in order to access their unit." (Id. ¶ 5.)  Plaintiffs

admit that they still have access to the building, although it is less convenient:

"In order to access the building a Security Guard must physically let her in.

This restricts and limits her access to only one entrance . . . ."  (Mot. for

Injunctive Relief, Dkt. [78-1] at 6.)  Thus, because Plaintiffs may still access

their unit, albeit with increased restrictions, they do not face irreparable harm.

See Diamond Power Int'l, Inc. v. Clyde Bergemann, Inc., 370 F. Supp. 2d 1339,

1349 (N.D. Ga. 2005) ("Mere injuries, however substantial, in terms of money,

time and energy necessarily expended in the absence of a stay are not enough."

(quoting Jefferson Cnty., 720 F.2d at 1520)).  Furthermore, Plaintiffs have

failed to carry their heavy burden to demonstrate that they have a substantial

likelihood of success on the merits of their claims.  As a result, Plaintiffs'

Motion for Preliminary Injunction [78] is **DENIED**.

## V.    Plaintiffs' Motion for Extension of Time to Complete Discovery [61]

Finally, after due consideration, Plaintiffs' Motion for Extension of Time

to Complete Discovery [61] is **GRANTED**.  The parties shall file a proposed

scheduling order as set forth below.

38

## VI.   Defendant Association's Motion to Compel Discovery [81]

On April 14, 2014, counsel for the Association mailed to Plaintiffs'

counsel First Interrogatories to Plaintiff Mildred Robinson ("First

Interrogatories), First Request for Production of Documents to Plaintiffs ("First

Document Request"), and First Request for Admissions to Plaintiff Mildred

Robinson ("First Admissions Request"). After being advised by Plaintiffs'

counsel that he had not received the foregoing until April 21, 2014, counsel for

the Association agreed to extend the time to serve discovery responses to May

21, 2014. The Court held a Scheduling Conference that was attended by counsel

on June 3, 2014. At the hearing, the Court indicated that the discovery period

would be extended, but the time for responding to outstanding discovery was

not extended. When Plaintiffs had not responded to the discovery by June11,

counsel for the Association sent a letter to Plaintiffs' counsel requesting

responses within 5 business days.

When no responses were forthcoming, the Association filed the Motion

to Compel [81] that is presently before the Court. Plaintiffs have file no

response to the motion, and it is, therefore, deemed to be unopposed. After due

consideration, the Motion [81] is hereby **GRANTED**. Plaintiffs are

39

**ORDERED**, within 7 days of the entry of this Order, to provide complete and verified responses to the First Interrogatories and the First Document Request. Plaintiffs have waived any opportunity to object to the discovery by failing to respond in a timely fashion. Further, the facts set out in the First Admissions Request are deemed admitted. The Association is entitled to attorney's fees for the bringing of this Motion. The Association shall file a statement of fees within 7 days of the entry of this Order, and Plaintiffs shall have 7 days thereafter to file objections, if any.

### Conclusion

For the foregoing reasons, the Court rules as follows:

(1)   Defendants' Motion to Strike [37] is **DENIED**;

(2)   Plaintiffs' Motion to Strike Plaintiffs' Filing of Documents 19, 50, and 52 [56] is **GRANTED**;

(3)   Plaintiffs' Motion to Strike the Association's Motion for Judgment on the Pleadings [59] is **DENIED**;

(4)   Defendant Weibel's Motion to Dismiss [40] is **GRANTED**;

(5)   Defendant Paine's Motion to Dismiss [77] is **GRANTED**;

(6)   Defendants' Amended Motion for Judgment on the Pleadings [41] is **GRANTED in part** and **DENIED in part**.  It is **GRANTED** as to the disparate impact claim in Count I, the breach of contract

40

claim based on deactivation of the access cards in Count II, Count III in its entirety, and the fraud claim in Count V.  It is **DENIED** as to all other claims;

(7)    The Association's Motion for Partial Summary Judgment on Its Counterclaim [38] is **GRANTED**;

(8)    Plaintiffs' Cross-Motion for Summary Judgment [64] is **DENIED**;

(9)    Plaintiffs' Motion for Preliminary Injunction [78] is **DENIED**;

(10)    Plaintiffs' Motion for Extension of Time to Complete Discovery [61] is **GRANTED**. The parties are **ORDERED** to file a joint proposed scheduling order concerning the extension of discovery within 14 days of the date of this Order.  If the parties cannot come to an agreement, each side shall file its own proposed scheduling order for the Court's consideration within 14 days of the date of this Order.

(11)    Defendant Association's Motion to Compel Discovery [81] is **GRANTED**. Plaintiffs are **ORDERED**, within 7 days of the entry of this Order, to provide complete and verified responses to the First Interrogatories and the First Document Request. Plaintiffs have waived any opportunity to object to the discovery by failing to respond in a timely fashion. Further, the facts set out in the First Admissions Request are deemed admitted. The Association is entitled to attorney's fees for the bringing of this Motion. The Association shall file a statement of fees within 7 days of the entry of this Order, and Plaintiffs shall have 7 days thereafter to file objections, if any.

41

**SO ORDERED**, this  2nd  day of September, 2014.


RICHARD W. STORY
United States District Judge